IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                              *
PEGGY HALEY and
JAMES HALEY
                              *
     Plaintiffs,
                              *
          v.                      CIVIL NO.: WDQ-09-1338
                              *
JACK CORCORAN, et al.,
                              *
     Defendants.
                              *


  *    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Peggy and James Haley sued Jack Corcoran, Michael Mattice, Charles Head, Alliance Title ("Alliance"), Option One Mortgage ("Option One"), First American Title Co. ("First American"), and others, for claims that arise from an alleged foreclosure rescue fraud.  Pending are Option One and First American's motions to dismiss for failure to state a claim upon which relief can be granted.  For the following reasons, the motions will be granted.

I.   Background

The complaint alleges a foreclosure rescue fraud.[1]  James and Peggy Haley, husband and wife, bought a house in 1986 for

---

[1]For a general discussion of foreclosure rescue fraud, see *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 495 (D. Md. 2007).

1

$89,500.[2]  Compl. ¶ 2, 13.  In 2005, the Haleys fell behind on their mortgage payments, and a foreclosure action was commenced in the Circuit Court for Carroll County.  *Id*. ¶ 14.  Shortly thereafter, Charles Head contacted the Haleys for Fundingforeclosure.com, and offered to help them stop the foreclosure and repair their credit.  *Id*.  Head explained that Fundingforeclosure.com would arrange the sale of the house to a person who would allow the Haleys to continue to live in the house and remain on its deed.  *Id*. ¶ 17.  During the year following the sale, the Haleys would lease the house from Nations Property Management.  *Id*.  Then, Head explained, the Haleys could repurchase the house with a loan that Head guaranteed would be extended.  *Id*.  Relying on these representations, the Haleys agreed to the transactions.  *Id*. ¶ 20.

The August 8, 2005 settlement was conducted by a notary public; the buyer, whom the Haleys later learned was Michael Mattice, was not present.  *Id*. ¶ 21.  The Haleys signed a deed in blank, which did not state the purchase price, and a lease requiring $2000 monthly payments to Nations Property Management.  *Id*. ¶¶ 29, 30.  Alliance prepared the settlement documents and was the settlement agent.  *Id*. ¶¶ 6, 22.  Alliance also was title agent for First American, the title insurer.  *Id*. ¶¶ 6, 10.  The

---

[2]For the pending motions, the Haleys' well-pleaded allegations are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Haleys were not given copies of the settlement documents.  *Id.* ¶¶ 25, 28.

The Haleys were not informed of the purchase price of the house or shown a "HUD-1" settlement statement.  *Id.* ¶ 23.  A deed to the house, stating a $400,000 purchase price, was later recorded.  *Id.* ¶ 31.  The Haleys did not receive proceeds from the settlement.  *Id.* ¶ 27.  Thereafter, the Haleys' mortgage obligations were satisfied, and the pending foreclosure was dismissed for lack of prosecution.  *Id.* ¶ 26.

The Haleys paid rent to Nations Property Management until November 2006; then Mattice informed them that he had bought the house with a loan from Option One secured by two mortgages.  *Id.* ¶¶ 33, 35, 37.  The Haleys then began making payments to Option One.  *Id.* ¶ 33.  Around this time, the Haleys also discovered that they were not on the deed with Mattice.  *Id.*

On June 6, 2007, Option One filed a foreclosure action against Mattice in the Circuit Court for Carroll County for nonpayment.  *Id.* ¶ 41.  On June 26, 2007, the Haleys filed an emergency motion to stop the foreclosure, which the Circuit Court granted three days later.  *Id.* ¶ 42.

On February 2, 2008, the Haleys filed suit in the Circuit Court for Carroll County.  Paper No. 2.  On April 2, 2009, Option One bought the house at a foreclosure auction for $250,250. Compl. ¶ 42.  On May 21, 2009, Haleys' suit was removed to this

Court on the basis of diversity.  Paper No. 1.  On June 9, 2009,

First American filed a motion to dismiss under Federal Rules of

Civil Procedure 12(b)(6) and 9(b).  Paper No. 10.   Option One

moved to dismiss on the same grounds on July 15, 2009.  Paper No.

18.

## II.  Analysis

Option One has moved to dismiss the Haleys' claims for quiet

title, equitable mortgage, negligent misrepresentation, and

unjust enrichment under Rule 12(b)(6), and the claims for

intentional misrepresentation and violation of the Maryland

Consumer Protection Act[3] ("MCPA") under Rules 12(b)(6) and 9(b).

First American has moved to dismiss the Haleys' claims for

negligent misrepresentation, unjust enrichment and civil

conspiracy under Rule 12(b)(6), and the claims for intentional

misrepresentation and violation of the MCPA under Rules 12(b)(6)

and 9(b).

### A.  Standard of Review

#### 1.  Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed

for failure to state a claim upon which relief can be granted.

Rule 12(b)(6) tests the legal sufficiency of a complaint, but

does not "resolve contests surrounding the facts, the merits of a

claim, or the applicability of defenses." *Presley v. City of*

---

[3]Md. Code Ann., Com. Law § 13-101, *et seq.*

*Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts as pleaded must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" the plaintiff is entitled to relief. *Id.* at 1950 (*citing* Fed. R. Civ. P. 8(a)(2)). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

The Court "should view the complaint in a light most

favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions], unwarranted deductions of fact, or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

2.   Rule 9(b)

When a plaintiff alleges fraud or when "the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud," *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000), Rule 9(b) requires that "the circumstances constituting fraud be stated with particularity." Fed. R. Civ. P. 9(b).  The circumstances required to be pled with particularity are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

When a complaint alleges fraud against multiple defendants, Rule 9(b) requires that the plaintiff identify each defendant's participation in the alleged fraud.  *Adams*, 193 F.R.D. at 250. This principle extends to allegations of fraud on the basis of an agency relationship: "[C]onclusory assertions that one defendant

controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b)." *Kolbeck v. LIT America, Inc.*, 923 F. Supp. 557, 569 (S.D.N.Y. 1996); *see also Adams*, 193 F.R.D. at 250. Further, when a plaintiff "seeks to hold a defendant vicariously liable for the acts of its agents, it must allege the factual predicate for the agency relationship with particularity." *Adams*, 193 F.R.D. at 250.

B.   Option One's Motion

1.   Quiet Title

The Haleys seek to quiet title to the house through a declaratory judgment that they are the sole owners of--and the defendants have no interest in--the house.  Option One moves to dismiss the Haleys' quiet title claim on the ground that it is prohibited by § 14-108(a) of the Real Property Article of the Maryland Code.

Section 14-108 allows a person in "actual peaceable possession of property" to sue for quiet title "when his title to the property is denied or disputed, or when any other person claims, of record or otherwise to own the property . . . or to hold any lien encumbrance on it."  Md. Code Ann., Real Prop. § 14-108 (LexisNexis 2009).  However, a quiet title claim may be brought only "if an action at law or proceeding in equity is not pending to enforce or test the validity of the title, lien,

encumbrance, or other adverse claim." *Id.; see also Keefauver v. Richardson*, 233 Md. 545, 197 A.2d 438 (1964) (dismissing quiet title suit when previously-filed action to foreclose rights of redemption in the property was still pending).

Option One argues that because the foreclosure action against Mattice is still pending in the Circuit Court for Carroll County, the Haleys cannot sue for quiet title here.  In foreclosure proceedings, a mortgagee seeks to "enforce" a lien on the property.  Here, although the Property was sold at auction on April 2, 2009, the foreclosure is still pending in Carroll County; the Haleys have filed exceptions to ratification of the sale which have not been resolved.[4]  Because the foreclosure action is still pending, the Haleys' quiet title claim against Option One will be dismissed.

    2.  Equitable Mortgage

The Haleys also seek a declaratory judgment that the execution and transfer to Mattice of the deed created an equitable mortgage rather than absolute ownership.  Option One argues that the transaction between the Haleys and Mattice is

---

[4]A district court may take judicial notice of "matters of public record" without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Clark v. BASF Salaried Employees' Pension Plan*, 329 F. Supp. 2d 694, 697 (W.D.N.C. 2004), *aff'd*, 142 Fed. Appx. 659 (4th Cir. 2005). State court filings are matters of public record. *See, e.g.*, *Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

irrelevant because it acquired its interest as a *bona fide* purchaser for value.

Under § 7-101 of the Real Property Article of the Maryland Code, "[e]very deed which by any other writing appears to have been intended only as security for payment of an indebtedness or performance of an obligation, though expressed as an absolute grant is considered a mortgage." Md. Code Ann., Real Prop. § 7-101 (LexisNexis 2009). But "a deed absolute on its face may be treated in equity as a mortgage [only] *between the original parties* and against all persons deriving title from the grantee who are not *bona fide* purchasers for value, without notice [.]" *Lednum v. Barnes*, 204 Md. 230, 103 A.2d 865, 870 (1954) (emphasis in original); *see also Proctor v. Metro. Money Store Corp.*, No. 07-1957, 2009 U.S. Dist. LEXIS 72771, at *34 (D. Md. Aug. 17, 2009). Here, the "original parties" to the deed transfer were the Haleys (grantors) and Mattice (grantee). Option One's mortgage derives from Mattice. Under § 7-101, the Haleys' claim must fail if Option One is a *bona fide* purchaser for value.

A mortgagee is treated as a purchaser, and if a mortgage is supported by consideration and taken in good faith, the mortgagee is treated as a *bona fide* purchaser for value. *See Irvington Fed. Sav. & Loan Ass'n v. West*, 194 Md. 211, 71 A.2d 1, 5 (1950). As a *bona fide* purchaser, the mortgagee is protected against adverse claims when there is no notice, actual or constructive,

9

of prior deeds, or other conveyances or liens against the premises.  *Id.*

A mortgagee may obtain a valid interest in real property from someone who obtained that property by fraud if the mortgagee had no notice of the fraud.  *Wicklein v. Kidd*, 149 Md. 412, 131 A.2d 780, 783 (1926).[5]  A mortgage lender is "entitled to the protections available to *bona fide* purchasers for value, whe[n] such lenders were without notice of the mortgagor's fraudulent conduct."  *Washington Mut. Bank v. Homan*, 186 Md. App. 372, 974 A.2d 376, 390 (Ct. Spec. App. 2009); *see also Julian v. Buonassissi*, 183 Md. App. 678, 963 A.2d 234, 245 (Ct. Spec. App. 2009).[6]

A grantee (or mortgagee) is presumed to act in good faith, and this presumption may be overcome only by showing that the grantee had knowledge of "suspicious circumstances" that would give rise to a duty to inquire into previous transactions involving the property.  *Julian*, 963 A.2d at 245; *see also Berger v. Hi-Gear Tire & Auto Supply, Inc.*, 257 Md. 470, 263 A.2d 507,

---

[5] "Fraud . . . perpetrated by a third person without the instigation, procurement, knowledge, or consent of the mortgagee, will generally not affect the mortgage or prejudice his security."  *Wicklein*, 149 Md. at 421, 131 A.2d at 783.

[6] Recent cases arising from fraudulent foreclosure rescue schemes have extended *bona fide* purchaser status to such mortgagees.  *See Homan,* 974 A.2d at 390-91; *Julian*, 963 A.2d at 245; *Wells Fargo Bank, N.A. v. Henson*, No. 07-3435, 2009 U.S. Dist. LEXIS 74991, at *5-6 (D. Md. Aug. 24, 2009).

509-10 (1970).

The Haleys have not alleged facts showing that Option One participated in or should have known of the alleged fraud in the conveyance to Mattice.[7]  The only allegation bearing on Option One's knowledge of the transaction is that Option One lent Mattice $400,000, secured by two mortgages on the house.  Compl. ¶ 35.  This allegation is insufficient to overcome the presumption of good faith and shift to Option One the burden of pleading and proving *bona fide* purchaser status.  Accordingly, Option One's motion to dismiss the equitable mortgage claim will be granted.

### 3. Negligent Misrepresentation

Option One seeks to dismiss the Haleys' negligent misrepresentation claim because the complaint fails to allege (1) the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement; (2) that the defendant intended would be acted upon by the plaintiff; (3) the defendant knew the plaintiff would probably rely on the statement, which, if erroneous, would cause loss or injury; (4) the plaintiff, justifiably, acted in reliance on the statement; and (5) the

---

[7]Option One argues that to state a claim for equitable mortgage, the Haleys must plead facts showing that Option One was *not* a *bona fide* purchaser, that is, that it participated in or had notice of the allegedly fraudulent transfer of the deed.  The Haleys counter that *bona fide* purchaser status is an affirmative defense that must be pled and proved by Option One.

plaintiff suffered damage proximately caused by that negligence. *Lloyd v. GMC*, 397 Md. 108, 916 A.2d 257, 273 (2007).

When, as here, the plaintiff alleges only economic loss, the plaintiff must also show that the defendant owed a duty of care because of an "intimate nexus between the parties." *L & P Converters v. Alling & Cory Co.*, 100 Md. App. 563, 642 A.2d 264, 267 (1994).  An intimate nexus requires contractual privity or a "sufficiently close nexus or relationship" from pre-contractual bargaining or similar communications.[8]

The Haleys assert that all the defendants had a duty to "exercise due diligence to prevent fraud in the foreclosure reconveyance of Plaintiffs['] home to Defendant Mattice." Compl. ¶ 93.  The complaint alleges only economic loss, and does not allege contractual privity or another close nexus between them and Option One.  Indeed, the Haleys have not alleged any relationship with Option One.  Accordingly, the claim for negligent misrepresentation against Option One must be dismissed.

    4.  Unjust Enrichment

Option One next argues that the Haleys have failed to state

_____

[8]*See id.* at 267; *Weisman v. Connors*, 312 Md. 428, 540 A.2d 783, 791-94 (1988); *Giant Food, Inc. v. Ice King, Inc.*, 74 Md. App. 183, 536 A.2d 1182, 1183-86 (Md. Ct. Spec. App. 1988); *Martens Chevrolet v. Seney*, 292 Md. 328, 439 A.2d 534, 539 (1982).

a claim for unjust enrichment.[9]

Even if the mortgages are "benefits," the Haleys have not stated a claim for unjust enrichment because a plaintiff cannot state a claim for unjust enrichment against a *bona fide* purchaser for value.  A person is unjustly enriched when he

> non-tortiously and *without notice that another has the beneficial ownership of it*, acquires property which it would have been wrongful of him to acquire with notice of the facts *and of which he is not a purchaser for value* is, upon discovery of the facts, under a duty to account to the other for the direct product of the subject matter and the value of the use to him [.]"

*Plitt v. Greenberg*, 242 Md. 359, 219 A.2d 237, 241 (1966) (*quoting* Restatement (First) of Restitution § 123) (emphasis added); *see also Fidelity Nat'l Title Ins. Co. v. Chicago Title Ins. Co.*, No. 94-2308, 1995 U.S. App. LEXIS 21972, at *10 (4th Cir. Aug. 14, 1995).  A *bona fide* purchaser (a purchaser for value who acquires property without notice of a competing claim) cannot be unjustly enriched.  *Plitt*, 219 A.2d at 241 (a transferee who possesses a plaintiff's property in good faith

---

[9]Unjust enrichment requires (1) a benefit conferred upon the defendant by the plaintiff, (2) a defendant's appreciation or knowledge of the benefit, and (3) the defendant's acceptance or retention of the benefit under circumstances that would make it inequitable for the defendant to retain the benefit without the payment of its value.  *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 936 A.2d 343, 351 (2007).

Option One argues that the complaint does not allege that it received a benefit from the allegedly fraudulent transaction with Mattice.  The Haleys respond that Option One's receipt of the two mortgages securing Mattice's loan-on which Option One has foreclosed-is a benefit.

after paying a good and valuable consideration is not subject to that plaintiff's unjust enrichment claim).  A claim for unjust enrichment requires an allegation that the defendant was not a *bona fide* purchaser.  *See id.*

The Haleys have not alleged facts showing that Option One had notice of the allegedly fraudulent transaction between the Haleys and Mattice. *See Plitt*, 219 A.2d at 241-42 (the plaintiff has the burden of proving either (1) the defendant had notice that it was wrongful to acquire the property or (2) the defendant was not a purchaser for value).   Nor have they shown that Option One was not a purchaser for value; indeed, the complaint merely alleges that Option One gave Mattice a purchase money loan in exchange for the two mortgages.  Compl. ¶ 35.  Accordingly, the Haleys' unjust enrichment claim must be dismissed.

     5.   Intentional Misrepresentation and Violation of the MCPA

Option One argues that the Haleys have not pled the intentional misrepresentation and MCPA[10] claims with particularity.  Because Rule 9(b)'s heightened pleading

---

[10]The Haleys assert claims under the Maryland Consumer Protection Act for unfair or deceptive trade practices. *See* Md. Code Ann., Com. Law § 13-301 (LexisNexis 2009).  The complaint alleges that "the false statements, deceptive actions, misrepresentations, omissions, and other acts described in this complaint deceived and tended to deceive Plaintiffs in violation of MCPA."  *See* Compl. ¶ 68.  This claim sounds in fraud, and is subject to the heightened pleading requirements of Rule 9(b). *See Adams v. NVR Homes, Inc*., 193 F.R.D. 243, 250-52 (D. Md. 2000).

requirements apply to the claims, the Haleys must allege "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

The complaint alleges no representations by Option One, but generally asserts fraudulent conduct by all the defendants.  This undifferentiated assertion of fraud against multiple defendants is prohibited by Rule 9(b).  *See Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000).  Rule 9(b) requires a plaintiff to specify each defendant's participation in the alleged fraud.  *Id*. Because the Haleys have not specified Option One's role in the alleged fraud, their intentional misrepresentation and MCPA claims will be dismissed.

B.  First American's Motion

1.  The Agency Relationship between First American and Alliance

With the exception of the unjust enrichment and civil conspiracy claims, the Haleys' claims against First American are based on Alliance's role as First American's agent in the sale of the house to Mattice.  Specifically, the Haleys allege that Alliance "serves as the agent for issuance of First American Title Insurance Company policies in Maryland," and that "First American . . . is the title insurance company for this transaction."  Compl. ¶¶ 6, 10.   These are the only factual

15

allegations about First American, and, apart from the unjust enrichment and civil conspiracy claims, the Haleys do not allege that First American is directly liable for issuing title insurance.  Rather, the Haleys seek to hold First American vicariously liable for Alliance's conduct as settlement agent and its preparation of the settlement documents.  *See id*. ¶¶ 6, 22.

First American maintains that Alliance's actions as settlement agent should be distinguished from its actions as title insurance agent.  First American contends that because the Haleys have not sufficiently alleged that First American's agent Alliance was anything other than a title insurance agent, the claims must be dismissed.

The plaintiff has the burden of proving the nature and extent of the principal-agent relationship.  *Green v. H & R Block*, 355 Md. 488, 735 A.2d 1039, 1047 (1999).  "Because the existence of an agency relationship is a factual matter under Maryland law, [the] Court evaluates . . . whether factual allegations are legally sufficient to establish an agency relationship."  *Proctor v. Metro. Money Store Corp.*, 579 F. Supp. 2d 724, 735 (D. Md. 2008) (*citing Green*, 735 A.2d at 1048). Three factors are considered in determining whether an agency relationship exists: "(1) the agent's power to alter the legal relations of the principal; (2) the agent's duty to act primarily

16

for the benefit of the principal; and (3) the principal's right to control the agent." *Green*, 735 A.2d at 1048.

"The employment of an agent for purposes of issuing title insurance does not (at least by itself) establish an agency relationship for purposes of settlement undertaken by that title agent." *Proctor*, 579 F. Supp. 2d at 736. "[A]n issuing [title insurance] agent may, in accordance with an agency contract, wear 'two hats,' one as an agent to issue or sell title insurer's insurance policies, and the other as a settlement agent to conduct closings on his or her own behalf." *Id.* (*quoting Nat'l Mortgage Warehouse, LLC v. Bankers First Mortgage Co.*, 190 F. Supp. 2d 774, 780 (D. Md. 2002). When the issuing agent conducts closing on his or her own behalf, "the title insurer is responsible only for the title insurance issued; it cannot be held liable for the agent's participation in related closings or the provision of escrow services."[11]  *Id.*

--------

[11]In their Opposition to First American's Motion to Dismiss, the Haleys argue that § 10-121(k) (formerly § 10-121(j)) of the Maryland Insurance Law Article has changed the nature of the agency relationship between a title issuer and a title agent and imposes upon the issuer greater responsibilities with respect to settlements and escrow services.  Specifically, the Haleys argue that in § 10-121(k):

> the legislature has expanded the agency relationship to include review and responsibility beyond the mere issuance of title insurance to include the essence of claims brought by Plaintiffs in their Complaint, namely the misappropriation of escrow funds and either negligently or willingly turning a blind eye to the underlying transaction.

The Haleys have not alleged facts establishing an agency relationship between First American and Alliance beyond title insurance.   The sole allegation relating to the relationship is that "Alliance . . . serves as the agent for issuance of First American . . . policies in Maryland."  Compl. ¶ 6.  The complaint makes no allegations about the basis, nature, or extent of the relationship.  Further, there is no allegation that the relationship covered Alliance's role as settlement agent. The Haleys have failed to allege an agency relationship that would impose on First American liability for Alliance's role as settlement agent.  Accordingly, their claims for intentional misrepresentation, violation of the MCPA, and negligent misrepresentation will be dismissed.

    2.  Civil Conspiracy

First American seeks to dismiss the Haleys' civil conspiracy claim because the complaint fails to allege a tort on which the conspiracy claim may be based.[12]  "Conspiracy is not a separate

---

Pls.' Opp. at 3-4.  This argument was rejected in *Proctor*, when the court explained that "[a]lthough § 10-121(j) certainly imposes an oversight duty on title insurers, this provision neither (1) creates a cause of action for its breach *or otherwise makes the title insurer the guarantor of closing activities* nor (2) encompasses the type of detailed oversight and responsibility inherent in a common law agency relationship."  579 F. Supp. 2d at 739-40 (emphasis added).

    [12]The elements of civil conspiracy are: (1) an agreement between two or more persons, (2) some unlawful or tortious act done in furtherance of the agreement or use of unlawful or tortious means to accomplish a legal act, and (3) damage to the

tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Alleco Inc. v. The Harry and Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 665 A.2d 1038, 1045 (1995).

First American contends that the civil conspiracy claim must be dismissed because the complaint does not adequately allege a tort claim against First American. The Haleys respond that all they must show is that First American agreed to accomplish an unlawful act, or use an unlawful means to accomplish a lawful act, and that one of the other defendants committed a tort in furtherance of the agreement.

The Haleys' have not stated a claim for civil conspiracy against First American because they have not alleged that First American entered into an agreement that a tort be committed. The closest they come is the allegation that "Alliance . . . serves as the agent for issuance of First American . . . policies in Maryland." Compl. ¶ 6. The Haleys have not alleged that the agency agreement between First American and Alliance contemplated tortious conduct. Because the Haleys do not allege such an agreement, their civil conspiracy claim against First American must be dismissed.

---

plaintiff. *See Lloyd v. GMC*, 397 Md. 108, 916 A.2d 257, 284 (2002).

3.   Unjust Enrichment

Finally, First American contends that the Haleys' unjust enrichment claim must be dismissed because the complaint failed to allege facts showing that they conferred a benefit on First American.  The Haleys rely on Paragraph 98, which states that "[a]ll Defendants . . . benefitted from the collection and receipt of illegal rents, fees and costs, and interests escrowed and other funds . . . associated with the wrongful obtaining of title to the Plaintiff's home."  Compl. ¶ 98.  In their Opposition, the Haleys assert that because "First American issued a policy relative to this transaction, they must have gotten paid."  Pls.' Opp. at 9.

Assuming that First American received a premium for issuing the policy, there is no allegation that the Haleys paid it or were responsible for paying it.[13]  Because the Haleys have not alleged facts showing that they conferred a benefit on First American, their unjust enrichment claim will be dismissed.

_____

[13]As title insurance premiums are frequently paid out of the mortgage loan proceeds, *see Sage v. Freedom Mortgage Co.*, 704 F.2d 1519, 1521 (11th Cir. 1983), it is possible that Mattice or Option One paid First American.  *See also* Md. Code Ann., Com. Law § 12-307 (LexisNexis 2009) ("At the time a loan is made, a lender may collect from the borrower . . . [t]he title insurance premiums or reasonable attorney's fees paid for searching and insuring the title to any real property securing the loan.").

III. Conclusion

For the reasons stated above, the Option One and First American motions to dismiss will be granted.


October 2, 2009                              /s/
Date                            William D. Quarles, Jr.
                                United States District Judge