# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

PEGGY HALEY, *et ux.*,                  :
          **Plaintiffs**          :
                              :     **CIVIL NO.: WDQ-09-1338**
**v.**                                  :
                              :
JACK CORCORAN, *et al.*,                :
          **Defendants**

**…o0o…**

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the Motion for Judgment by Default Against Defendant Charles Head and Brief in Support that Plaintiffs Peggy and James Haley filed, ECF No. 60. Defendant Head has not filed a response, and the time for doing so has passed. *See* Local Rule 105.2.a. On August 6, 2010, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Quarles referred this case to me to review Plaintiffs' Motion and to hold an evidentiary hearing, if necessary. ECF No. 61. I find that a hearing on liability is unnecessary in this case. *See* Fed. R. Civ. P. 55(b)(2); Local Rule 105.6. For the reasons stated herein, I recommend that Plaintiff's Motion for Judgment by Default be GRANTED IN PART and DENIED IN PART.

## I. FACTUAL AND PROCEDURAL HISTORY

In this foreclosure rescue fraud case, Plaintiffs were homeowners who had purchased a house in 1986 for $89,500. Compl. ¶¶ 2, 13, ECF No. 2. Plaintiffs took out a second mortgage and then fell behind on their two mortgage payments, and in 2005, a foreclosure action began in state court. *Id.* ¶ 14. Defendant Head contacted Plaintiffs soon thereafter, offering his assistance

to avoid foreclosure and to repay their mortgages and other debts. *Id.* ¶¶ 14, 16. Head was the "organizer of the fraud" alleged in this case. Pls.' Aff. ¶ 6, Pls.' Mot. Ex. 1, ECF No. 60-1. Head informed Plaintiffs that, to avoid foreclosure, they could sell their house to a third party but remain on the deed and continue to live in the house while making "mortgage" payments through a lease, and a year later receive a loan with which to repurchase their home. Compl. ¶¶ 17, 18. Relying on Head's representations, Plaintiffs agreed to utilize Defendant's consulting services and "execute several contracts and documents."[1] *Id.* ¶ 20.

At an August 8, 2005 settlement, Plaintiffs sold the property to Defendant Michael Mattice for $400,000, with the understanding that their names would be on the deed with Mattice. *Id.* ¶¶ 21, 31. Mattice was a "fraudulent purchaser," Pls.' Aff. ¶ 8, and was not present at the settlement. Compl. ¶ 21. In November 2006, Mattice contacted the Plaintiffs and explained that he had participated in several similar transactions with Defendant Head, and that in each he received around $5,000.00. *Id.* ¶ 32. Plaintiffs were not given any paperwork prior to the closing, and they claimed that they were rushed through the signing process without any time to look over the documents they were signing. *Id.* ¶ 22. At the settlement, Plaintiffs also signed a lease that allowed them to live in the house for monthly payments of $2,000. *Id.* ¶¶ 29, 30. Plaintiffs paid the monthly fee from September 2005 to November 2006, for a total of $28,000. *Id.* ¶ 37. Defendants received "compensation" for their services, and Defendant Head

---

[1] Plaintiffs do not specify in their Complaint what these "contracts and documents" were. The only contract attached to the motion is Addendum #B to the Equity Purchase Agreement between Plaintiffs and a company called Creative Loans, LLC. Pls.' Mot. Ex. 2, ECF No. 60-2. Addendum #B provided that Creative Loans would remove its name from the title to Plaintiffs' property and "sell [its] interest in the property back to Peggy and James Haley . . . if all the terms of the contract are met as agreed," but not until Plaintiffs paid "all liens and encumbrances paid by Creative Loans LLC and/or assigns along with any additional monies paid to Peggy and James Haley as consideration for this contract." *Id.* The addendum further provided: "Upon Successful completion of the Equity Purchase Agreement Creative Loans guarantees financing." *Id.* The Equity Purchase Agreement is not a part of the record.

specifically received "compensation in excess of 8% of the reconveyance mortgage." Compl. ¶ 60.d, e.

After the closing, Plaintiffs' first mortgage was paid off for $282,522.23, their second mortgage was paid off for $17,973.30, and the 2005 foreclosure action was dismissed. *Id*. ¶ 26; Pls.' Mot. 5 & Ex. 3, ECF No. 60-3. The deed that was recorded as a result of the sale did not list Plaintiffs as owners, and Plaintiffs did not receive any proceeds from the sale. Compl. ¶¶ 27, 33. In November 2006, Plaintiffs discovered that no payments had been made on any of their other outstanding obligations and due to interest charges, their debts had increased. *Id*. ¶ 34. The property was mortgaged twice, with Mattice as mortgagor, for $320,000 and $80,000. *Id.* ¶ 35. No payments were made on the new mortgages. Pls.' Aff. ¶ 14. On April 2, 2009, the property was sold to Wells Fargo Bank Trustee at a foreclosure auction for $250,250. *Id.* ¶ 48; Pls.' Mot. 6 & Ex. 4, ECF No. 60-4.

Plaintiffs filed a Complaint, removed to this Court on the basis of diversity on May 21, 2009, ECF No. 1, alleging, inter alia, that Defendants, including Head, violated the Protection of Homeowners in Foreclosure Act ("PHIFA"), Md. Code Ann., Real Prop. §§ 7-301 – 7-325 (Count II); the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 – 13-501 (Count III); and the Maryland Credit Services Business Act ("MCSBA"), Md. Code Ann., Com. Law §§ 14-1901 – 14-1906 (Count IV). Compl. ¶¶ 12, 14, 15. Plaintiffs also claimed that Defendant Head and other defendants are liable for intentional misrepresentation (Count V); negligent misrepresentation (Count VI); unjust enrichment (Count VII); civil conspiracy to commit fraud and violate the PHIFA, MCPA, and MCSBA (Count VIII); and breach of contract (Count IX). *Id*. ¶¶ 18, 20, 21, 22, 23. Defendant Head was served

personally in the Sacramento County Main Jail on December 14, 2009.[2]  Proof of Service, ECF

No. 34.  Defendant Head did not file an Answer.  On February 17, 2010, Plaintiffs moved for

Entry of Default as to Defendant Head, and the Clerk entered an Order of Default on February

22, 2010.  ECF Nos. 37-38.

Plaintiffs filed the pending Motion for Judgment by Default on August 2, 2010, asking

the Clerk to enter a judgment against Defendant Head in the amount of $3,455,132.78.  Pls.'

Mot. 10.  In support thereof, Plaintiffs filed (1) Plaintiffs' Affidavit in Support of Motion for

Default of Defendant Charles Head, (2) Addendum #B to Equity Purchase Agreement, (3) HUD

1 form and (4) MDAT Property Description.  Pls.'s Mot. Exs. 1, 2, 3, 5;[3] ECF Nos. 60-1, 60-2,

60-3, 60-4.

In their motion, Plaintiffs allege that Head gained $99,504.47 in gross proceeds from

selling Plaintiffs' house, and that they are entitled to actual damages equivalent to Head's gross

proceeds under the MCPA; the same damages for Head's purported intentional

misrepresentation; and the same damages once again for Head's purported negligent

misrepresentation.  Pls.' Mot. 6, 8.  According to Plaintiffs, the appropriate relief for Head's

violation of the PHIFA and the MCSBA would be treble damages (based on the aforementioned

actual damages) in the amount of $298,513.41 for each violation. Pls.' Mot. 5, 7.   For Head's

alleged unjust enrichment, Plaintiffs seek $400,000, insisting that their home sold for $400,000

and Head received "the entire benefit" of the amount paid, such that the actual damages total

$400,000.  Pls.' Mot. 9.  Plaintiffs seek $35,000 for civil conspiracy and $35,000 for breach of

---

[2] Defendant Head has since been released.  Pls.' Mot. for Extension of Time ¶ 3, ECF No. 58.

[3] While Plaintiffs refer to "Exhibit 4 (Circuit Court for Carroll County Docket on Foreclosure)"
on page 6 of their Motion for Judgment by Default and number the exhibits as if there were five,
only four documents were filed with their motion.  The "Circuit Court for Carroll County Docket
on Foreclosure is not a part of the record.

contract, without substantiating the sum for either claim. Pls.' Mot. 9-10. Thus, Plaintiffs seek actual damages of $99,504.47 three times, under three theories of recovery; treble damages of $298,513.41 twice, under two theories of recovery; and an additional $470,000 under other theories of recovery. Cumulatively, these sums total $1,365,540.23. Plaintiffs claim a total of $3,455,132.78, but they do not explain how they reached their total.

## II.    DISCUSSION

### A.  Default Judgment

Rule 55(b) of the Federal Rules of Civil Procedure governs default judgments. Rule 55(b)(1) provides that the clerk may enter a default judgment if the plaintiff's claim is "for a sum certain or a sum that can be made certain by computation." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *See Medunic v. Lederer*, 64 F.R.D. 403, 405 n.7 (E.D. Pa. 1974) (concluding that clerk could not enter default judgment where damages were not liquidated), *reversed on other grounds*, 533 F.2d 891 (3d Cir. 1976).

If the sum is not certain or ascertainable through computation, Rule 55(b)(2) provides:

[T]he party must apply to the court for a default judgment. . . . The court may conduct hearings or make referrals — preserving any federal statutory right to a jury trial — when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;
(B) determine the amount of damages;
(C) establish the truth of any allegation by evidence; or
(D) investigate any other matter.

As the Court noted in *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006),

The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on the merits." *United States v. Shaffer Equip. Co*., 11 F.3d

450, 453 (4th Cir. 1993). However, default judgment is available when the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

In determining whether to award a default judgment, the Court will take as true the well-pleaded factual allegations in the complaint, other than those pertaining to damages, as discussed *infra*. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("'The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'") (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *see* Fed. R. Civ. P. 8(b)(6); *Agora Fin., LLC v. Samler*, No. WDQ-09-1200, 2010 WL 2899036, at *2-3 (D. Md. June 17, 2010) (quoting *Ryan*, 253 F.3d at 780-81); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2688 (3d ed. 1998). Nonetheless, the Court must "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Wright & Miller, *supra*, § 2688; *see Ryan*, 253 F.3d at 780 ("'The defendant is not held . . . to admit conclusions of law. . . . [A] default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.'" (quoting *Nishimatsu*, 515 F.2d at 1206)); *Agora Fin., LLC*, 2010 WL 2899036, at *3 (quoting *Ryan*, 253 F.3d at 780-81); *see also Ohio Cent. R.R. v. Cent. Trust Co.*, 133 U.S. 83, 91 (1890) (stating that even though plaintiff's allegations may be taken as true and "the defendant may not be allowed, on appeal, to question the want of testimony or the insufficiency or amount of the evidence, he is not precluded from contesting the sufficiency of the bill, or from insisting that the averments contained in it do not justify the decree"); *e.g.*, *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that "Plaintiff's pleadings, taken as true, establish all of the alleged violations").

As noted, Defendant Head failed to plead or otherwise assert a defense.  Thus, all of Plaintiffs' factual allegations in their Complaint not pertaining to damages are deemed admitted. Fed. R. Civ. P. 8(b)(6); *Ryan*, 253 F.3d at 780.  Plaintiffs moved for both an entry of default on February 17, 2010, and a default judgment on August 2, 2010, and Defendant Head still did not respond.  It is within the court's discretion to grant default judgment when a defendant is unresponsive.  *See Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987) (upholding a default judgment when the defendant lost its summons and did not respond within the proper period); *Disney Enters.*, 446 F. Supp. 2d at 405–06 (holding that entry of default judgment was proper because defendant had been properly served with complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *see also Lawbaugh*, 359 F. Supp. 2d at 422 (concluding that default judgment was appropriate because defendant was "unresponsive for more than a year" after denial of his motion to dismiss, even though he was properly served with plaintiff's motions for entry of default and default judgment).  Well over a year has passed since Defendant Head received the Complaint, yet he still has not responded. Thus, the Court should grant default judgment as to any counts for which Plaintiffs have established Defendant Head's liability.

With regard to liability, Plaintiffs first claim that Defendant Head violated PHIFA as a "foreclosure consultant."  Pursuant to PHIFA, a foreclosure consultant is a person who

> solicits or contacts a homeowner in writing, in person, or through any electronic or telecommunications medium and directly or indirectly makes a representation or offer to perform any service that the person represents will: (i) stop, enjoin, delay, void, set aside, annul, stay, or postpone a foreclosure sale; . . . (vii) save the homeowner's residence from foreclosure; . . . or (x) arrange for the homeowner to become a lessee or renter entitled to continue to reside in the homeowner's residence after a sale or transfer.

Md. Code Ann., Real Prop. § 7-301(c). Defendant Head represented to Plaintiffs that he was offering a service which could stop and/or postpone the imminent foreclosure sale of their home through a transaction in which an individual would purchase their home and Plaintiffs would be responsible for mortgage payments through a lease. Compl. ¶¶ 16-17. Defendant Head also told Plaintiffs that, after a period of a year, they would be able to repurchase their home with a loan guaranteed to them by Defendant Head. Compl. ¶¶ 17-18. Therefore, based on the evidence that Plaintiffs submitted, Defendant Head is a foreclosure consultant under PHIFA.

A foreclosure consultant violates PHIFA if the consultant does not provide a foreclosure consultant contract to the homeowners for their review before signing. Real Prop. § 7-306(a)(1). In addition, the foreclosure consultant contract must contain specific notices and disclosures as specified in Real Prop. § 7-306. Defendant Head did not provide Plaintiffs with a foreclosure consultant contract or any other paperwork containing the required notices and disclosure, before the notary arrived at the Haley's home with closing documents to be signed. Compl. ¶¶ 21-22, 60b. A foreclosure consultant also violates PHIFA if he receives any compensation before he has performed fully each and every service he has contracted to perform or represented that he would perform. Real Prop. § 7-307(2). Defendant Head offered to act as a foreclosure consultant for the Plaintiffs by providing services to stop and/or postpone the imminent foreclosure of their home and to help repair their credit, and Plaintiffs accepted his offer of foreclosure consulting services, such that Defendant Head was contractually obligated to perform the services he offered. Compl. ¶¶ 16, 20. The mortgages on Plaintiffs' home were paid off and foreclosure was postponed, and Defendant Head received "compensation in excess of 8% of the reconveyance mortgage." Compl. ¶¶ 27, 34, 60.e. However, Plaintiffs' other debts were not paid off or satisfied in any way and actually increased after they began their relationship with

Defendant, and the property was subject to two new mortgages. Compl. ¶¶ 27, 34, 35. Therefore, Defendant Head received compensation without performing all of his contractual obligations. Compl. ¶ 60.d. Therefore, based on the evidence submitted by Plaintiffs, Defendant violated multiple provisions of PHIFA. Because a homeowner may bring a private action for damages against anyone who violates PHIFA, Real Prop. § 7-320, Defendant is liable to Plaintiffs. Because Plaintiffs have established Defendant's liability under PHIFA, a default judgment is proper on Count II. *See Lawbaugh*, 359 F. Supp. 2d at 422 (default judgment is proper where plaintiff's pleadings establish defendant's liability).

Also, Plaintiffs claim that Defendant Head violated MCPA by making false statements and misrepresentations. Compl. ¶ 68. MCPA provides a private cause of action to recover for injury or loss sustained as a result of a practice prohibited by MCPA. Md. Code Ann., Com. Law § 13-408. MCPA proscribes unfair or deceptive trade practices, including, *inter alia*, false statements, misrepresentations and violations of PHIFA. *Id*. § 13-301(1), (14)(xxv). PHIFA provides that a "violation of this subtitle is an unfair or deceptive trade practice within the meaning of Title 13 of the Commercial Law Article [MCPA] and is subject to the enforcement and penalty provisions contained in Title 13 of the Commercial Law Article." Real Prop. § 7-319(d). Defendant Head told Plaintiffs that through the transaction with his company, they would remain on the deed to their home, the company would step in and assist in paying off other debts of the Plaintiffs, and, after a period of a year, they would be able to repurchase their home with a loan guaranteed to them by Defendant Head. Compl. ¶¶ 16-18. Plaintiffs later discovered their names were not on the deed, their debts had actually increased, their home was mortgaged again twice, payments were not made on the new mortgages, and they were not able to repurchase their home. *Id*. ¶¶ 33, 34, 35, Pls.' Aff. ¶ 14, 17. Therefore, based on the evidence

that Plaintiffs submitted, Defendant Head made false statements and misrepresentations in violation of MCPA. Additionally, Defendant Head's PHIFA violation is also a MCPA violation. *See* Com. Law § 13-301(14)(xxv); Real Prop. § 7-319(d). Because Plaintiffs have established Defendant's liability under MCPA, a default judgment is proper on Count III. *See Lawbaugh*, 359 F. Supp. 2d at 422.

Further, Plaintiffs claim that Defendant Head violated MCSBA. Compl. ¶ 76. Under MCSBA, a "[c]redit services business" is

> any person who, with respect to the extension of credit by others, sells, provides, or performs, or represents that such person can or will sell, provide, or perform, any of the following services in return for the payment of money or other valuable consideration: (i) Improving a consumer's credit record, history, or rating or establishing a new credit file or record; (ii) Obtaining an extension of credit for a consumer; or (iii) Providing advice or assistance to a consumer with regard to either subparagraph (i) or (ii) of this paragraph.

Com. Law § 14-1901(e). A consumer is "any individual who is solicited to purchase or who purchases . . . the services of a credit services business." *Id*. § 14-1901(c). Defendant Head represented to the Plaintiffs that he would improve their credit record, which would enable them to obtain an extension of credit for a mortgage, therefore establishing his role as a credit services business and Plaintiffs' roles as consumers. *See* Compl. ¶ 71.

A credit services business violates MCSBA by receiving money or other consideration from a consumer, unless it has secured a license from the Commissioner of Financial Regulation; making false and misleading statements in the offer or sale of its services; engaging in any act that operates as a fraud or deception on any person in connection with the offer or sale of its services; or charging or receiving money prior to full and complete performance of the services it has agreed to perform. Com. Law § 14-1902. As noted above, Defendant made false and misleading statements to Plaintiffs when he offered them his services as a foreclosure consultant,

and he received compensation from Plaintiffs even though the services he promised were not performed fully. Therefore, Defendant Head violated MCSBA. *See id.* However, there is no private cause of action for violating MCSBA, and therefore Defendant Head cannot be liable under MCSBA to Plaintiffs, and a default judgment is not proper on Count IV. *See Ryan*, 253 F.3d at 780-81 (affirming district court's conclusion that "acceptance of theses undisputed facts does not necessarily entitle the appellants to the relief sought.").[4] Nonetheless, a violation of MCSBA is also a violation of MCPA, Com. Law § 14-1914(a) providing further support for Defendant's liability under Counts II and III.

Plaintiffs also allege that Defendant Head is liable for intentional misrepresentation. Compl. ¶¶ 86-91. The elements of intentional misrepresentation are (1) that a representation made by a party was false; (2) that either its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth to impute knowledge to that party; (3) that the misrepresentation was made for the purpose of defrauding some other person; (4) that the other party not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulted if it had not been made; and (5) that the other party suffered damage directly resulting from the misrepresentation. *Suburban Mgmt. v. Johnson*, 204 A.2d 326, 329 (Md. 1964). Plaintiffs must prove each of these elements by clear and convincing evidence. *VF Corp. v. Wrexham Aviation Corp.*, 715 A.2d 188, 193 (Md. 1998). Defendant Head made a false representation to Plaintiffs about the nature of the transaction in which they were participating. Specifically, Head told Plaintiffs they would remain on the deed of their home and that they

---

[4] Even if Plaintiffs had alleged sufficient facts for the Court to grant a default judgment as to the claim for violation of the MCSBA, Plaintiffs would have been unable to recover damages on this claim because they would have been duplicative, as discussed in Section B, Damages.

would be able to repurchase their home after a year, but neither was the case. Compl. ¶¶ 17, 18. Defendant Head's knowledge of the falsity of his representations to Plaintiffs can be imputed to him because he recklessly disregarded the truth. *Id*. ¶ 88. Plaintiffs suffered significant damage as a result of Defendant Head's fraudulent acts, including the loss of title to their home, any equity they had in the home, and other financial resources. *Id*. ¶ 91. However, Plaintiffs have not alleged sufficient facts for the Court to conclude that Plaintiffs were justified in their reliance on Head's misrepresentation. Therefore, the evidence that Plaintiffs submitted does not establish Defendant Head's liability to Plaintiffs for intentional misrepresentation, and a default judgment is not proper on Count V. *See Ryan*, 253 F.3d at 780-81.

Plaintiffs also claim that Defendant is liable for negligent misrepresentation. Compl. ¶ 92-95. Negligent misrepresentation differs from intentional misrepresentation in that intent to deceive is not an element. *Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 537 (Md. 1982). In a claim for negligent misrepresentation, Plaintiffs must prove: "(1) the defendant, owing a duty of care to the plaintiff, negligently assert[ed] a false statement; (2) the defendant intend[ed] that his statement [would] be acted upon by the plaintiff; (3) the defendant ha[d] knowledge that the plaintiff [would] probably rely on the statement, which, if erroneous, [would] cause loss or injury; (4) the plaintiff, justifiably, [took] action in reliance on the statement; and (5) the plaintiff suffer[ed] damage proximately caused by the defendant's negligence." *Goldstein v. Miles*, 859 A.2d 313, 331 (Md. Ct. Spec. App. 2004), *citing Martens Chevrolet, Inc.*, 439 A.2d at 539. Again, because Plaintiffs have not alleged sufficient facts to demonstrate that their reliance was

justified, they have not established Defendant's liability for negligent misrepresentation. Therefore, a default judgment is not proper on Count VI.[5]  *See Ryan*, 253 F.3d at 780-81.

Additionally, Plaintiffs claim that Defendant is liable for breach of contract.  Compl. ¶¶ 105-08.  A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract . . . ."  *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000) (quoting *Conn. Pizza, Inc. v. Bell Atl.-Wash.*, *D.C., Inc.*, 193 B.R. 217, 225 (Bankr. D. Md. 1996) (quoting *Weiss v. Sheet Metal Fabricators, Inc.*, 110 A.2d 671, 675 (Md. 1955)) (quotation marks omitted)).  A contract exists where there is "mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration."  *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004).

Here, Plaintiffs have not provided the contract to the Court or alleged its terms in detail, but they have demonstrated its existence sufficiently.  Based on Plaintiffs' allegations, it is clear that Defendant Head offered services to the Plaintiffs, representing that he could stop and/or postpone the imminent foreclosure of their home and help repair the Plaintiffs' credit.  Compl. ¶ 16.  Further, Plaintiffs accepted Head's offer by agreeing to use his foreclosure consulting services.  *Id.* ¶ 20.  The terms of the agreement were that Defendant and his associates would help Plaintiffs avoid foreclosure and give them a loan to "repurchase" their home in return for monthly payments and co-ownership of their home.  *Id.* ¶¶ 16-18, 29-30.  With regard to consideration, Plaintiffs alleged that "Defendants received substantial fees and payments," *id.* ¶ 106, and that Plaintiffs paid $2,000 per month, *id.* ¶ 29, 30, 37.  As discussed previously, Defendant Head did not perform fully the services he agreed to perform.  Therefore, based on

---

[5] As with the MSCBA claim, success on either of the misrepresentation claims would not have added to Plaintiffs' ultimate recovery because Plaintiffs would have been unable to recover duplicative damages.

Plaintiffs' well-pleaded factual allegations, Defendant is liable to Plaintiffs for breach of contract, and a default judgment is proper on Count IX. *See In re Ashby Enters., Ltd.*, 250 B.R. at 72.

Plaintiffs also claim that Defendant Head is liable for unjust enrichment. Compl. ¶¶ 96-100. When an express contract is present, a plaintiff cannot recover under the quasi-contractual theory of unjust enrichment. *See Froelich v. Erickson*, 96 F. Supp. 2d 507, 524 (D. Md. 2000), *aff'd sub nom. Froelich v. Senior Campus Living, LLC*, 246 F.3d 664 (4th Cir. 2001). Because Plaintiffs have established Defendant Head's liability for breach of contract, Plaintiffs may not recover on their claim for unjust enrichment, *see id.*, and a default judgment is not proper on Count VII.

Plaintiffs' final claim is that Defendant Head is liable for civil conspiracy to commit fraud and to violate the PHIFA, MCSBA, and MCPA. Compl. ¶¶ 101-04. The elements for an action for civil conspiracy are: (1) an agreement between two or more people, (2) some unlawful act done in furtherance of the conspiracy, and (3) damages. *Van Royen v. Lacey*, 277 A.2d 13, 14 (Md. 1971). Plaintiffs allege that Defendant Head "entered into an agreement" with other defendants "whereby they agreed to wrongfully and illegally defraud Plaintiffs and engage in acts which violated PHIFA, MCSBA, and MCPA." Compl. ¶ 102. Also, they state that Defendant Mattice received about $5,000 for each transaction. Compl. ¶ 32. Plaintiffs provide no further information about the agreement, such as any indication that Mattice understood that he was being paid to participate in deceiving homeowners. Plaintiffs have not alleged sufficient facts for the Court to conclude that such an agreement existed. Therefore, based on the evidence that Plaintiffs submitted, Defendant Head is not liable to Plaintiffs for civil conspiracy to commit fraud, and a default judgment is not proper on Count VIII. *See Ryan*, 253 F.3d at 780-81.

### B. Damages

Preliminarily, I note that Plaintiffs request duplicative damages. Such a request is without merit because, under what is known as the "one wrong, one recovery rule," a party may not recover twice for one injury, even if the party asserts multiple, consistent theories of recovery. *See Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 333 (1980). ("It . . . goes without saying that the courts can and should preclude double recovery by an individual.") *United States v. Rachel*, 289 F. Supp. 2d 688, 697 (D. Md. 2003) ("The one wrong, one recovery rule precludes a party from double recovery for a single injury." (citing *Kramer v. Emche*, 494 A.2d 225, 231 (Md. Ct. Spec. App. 1985)). Plaintiffs' various causes of action allege liability under Maryland law, and under Maryland law, "[p]leading several different theories or causes of action does not . . . transform a single injury into multiple injuries." *Kramer*, 494 A.2d at 232; *Montgomery Ward & Co. v. Cliser*, 298 A.2d 16, 26-27 (Md. 1972) ("'It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury. A plaintiff may not recover damages twice for the same injury simply because he has two legal theories . . . The overlapping of damages is generally not permissible, and a person is not entitled to recover twice for the same elements of damage growing out of the same occurrence or event . . .'") (quoting 25 C.J.S. Damages § 3).

*Kramer*, 494 A.2d at 231-32, which addressed recovery from multiple defendants, rather than double recovery from the same defendant, is informative nonetheless. There, mortgagees, after learning that their mortgage on a property was subordinate to two subsequent deeds of trust, filed suit against the mortgagors, the attorney whose failure to file the mortgage led to its subordination, and the trustees who gained priority over the unrecorded mortgage as a result of

the failure to file. *Id.* at 227-29. The mortgagees settled with the attorney for $80,000. *Id.* at 229.

Then, at trial, the judge ordered that the mortgage be "placed in first position as to the property"

and, finding that approximately $80,000 was due to the mortgagees, ordered that the debt be paid

from the proceeds from the sale of the property. *Id.* at 230. On appeal, considering that the

mortgagees already received $80,000 from the attorney, the Maryland Court of Special Appeals

held that the mortgage could not be given priority over the deeds of trust because that would

result in a double recovery. *Id.* at 232. Also, the mortgage debt had to be reduced by $80,000 to

prevent double recovery. *Id.* at 233.

Here, Plaintiffs' claims all stem from the same offense—Defendants' alleged mortgage

foreclosure rescue fraud—, and the damages claimed are related and duplicative. Specifically, in

Counts II, V, VI, VIII, and IX, Plaintiffs allege the loss of equity in their home. Compl. ¶¶ 61,

91, 100, 108. In Counts V, VII, VIII, and IX, Plaintiffs allege the loss of title to their home. *Id.*

¶¶ 91, 103, 108. In Counts II, III, IV, VI, VII, VIII, and IX, Plaintiffs allege damages in the form

of the fees and/or rent they paid to Defendants. *Id.* ¶¶ 61, 69, 76, 103, 100, 108. Thus, Plaintiffs'

recovery is limited to the amount of damages they incurred from the loss of their home and the

payments they made to Defendants.

Furthermore, "[a] default judgment must not differ in kind from, or exceed in amount,

what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Federal Practice and Procedure

§ 2663 explained the "theory of this provision":

> [T]he defending party should be able to decide on the basis of the relief requested
> in the original pleading whether to expend the time, effort, and money necessary
> to defend the action. It would be fundamentally unfair to have the complaint lead
> defendant to believe that only a certain type and dimension of relief was being
> sought and then, should defendant attempt to limit the scope and size of the
> potential judgment by not appearing or otherwise defaulting, allow the court to
> give a different type of relief or a larger damage award.

Wright & Miller, *supra*, § 2663 (footnote omitted).

Interpretation of Rule 54(c) has "led to a dizzying array of judicial decisions addressing the precise meaning of the requirement that a default judgment may not 'exceed in amount that prayed for in the demand for judgment.'" *Lopez v. NTI, LLC*, No. DKC 2008-1579, 2008 WL 5120542, at *2 (D. Md. Dec. 4, 2008). The Fourth Circuit observed:

> When a complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages. *See, e.g.*, *Compton v. Alton Steamship Co.*, 608 F.2d 96, 104 (4th Cir. 1979); *Producers Equip. Sales, Inc. v. Thomason*, 15 Kan. App. 2d 393, 808 P.2d 881, 886 (Kan. Ct. App. 1991). The rationale is that a default judgment cannot be greater than the specific amount sought because the defendant could not reasonably have expected that his damages would exceed that amount.

*In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000) (quoted in *Lopez*, 2008 WL 5120542, at *2). Additionally, the Fourth Circuit stated that in cases in which the complaint does not specify an amount of damages, some courts "have reasoned that as long as the defendant receives notice that some damages may be awarded, general allegations of actual damages suffice to support a default judgment," and courts have entered "a default judgment for money damages when the complaint requests no specific amount," while others have concluded that a default judgment for greater damages than those sought in the complaint violates Rule 54(c). *Id.* at 133 (certifying question to Supreme Court of Hawai'i, which held that "a default judgment is not void for violating HRCP Rule 54(c) [which has identical language to Fed. R. Civ. P. 54(c)], unless the violation deprived the defaulting party of due process by failing to provide notice of the scope of the claim and a meaningful opportunity to defend against it," *In re Genesys Data Techs., Inc.*, 95 Hawai'i 33, 18 P.3d 895, 902 (Hawai'i 2001)).

*Graduate Management Admission Council v. Lei Shi*, No. 1:07cv605, 2007 WL 4692777 (E.D. Va. Dec. 11, 2007), *adopted in part*, 2008 WL 112047 (E.D. Va. Jan. 7, 2008), is informative. There, the plaintiff filed a complaint seeking statutory damages in an unspecified

amount. *Id.* at *4. Yet, when the plaintiff moved for default judgment, the court granted the motion and awarded over $7 million in damages, reasoning that "[c]onsistent with Rule 54(c) and Fourth Circuit case law, Plaintiff's Complaint . . . was not at odds with the specified damages sought in Plaintiff's Memorandum in Support of their Motion for Default Judgment" because the complaint "was silent as to a specific request for damages" and therefore the plaintiff did not "seek[ ] an award in excess of the amount pled in the Complaint." *Id.* at *5.

Here, in their Motion for Judgment by Default, Plaintiffs allege total damages of $1,365,539.57 (and miscalculate the total as $3,455,132.78). Specifically, with regard to the Counts for which a default judgment is proper, they allege (duplicatively, as discussed above) $298,513.41 under PHIFA (Count II) as treble damages; $99,504.47 under MCPA (Count III) as actual damages; and $35,000 for breach of contract (Count IX). However, in their Complaint, Plaintiffs claimed a total of "in excess of" $350,000 in damages, in addition to treble and punitive damages, interest, and costs. Specifically, for their PHIFA claim, Plaintiffs stated that they were "damaged significantly" by "the unlawful loss of more than $100,000 in equity in [their] home, illegal fees and rent paid to Defendants Head, Mattice and Defendant Corcoran, and other costs," and they claimed "an amount to be determined by a jury plus treble damages pursuant to [Md. Code Ann., Real Prop. 7-320(c)] for the Defendants' willful and knowing violation of PHIFA"; for the MCPA violation, Plaintiffs claim "[a]ctual damages exceeding $50,000"; and for breach of contract, Plaintiffs claim "damages exceeding $35,000." Compl. ¶ 14, 15, 24, 61. Defendants certainly were not put on notice of possible damages exceeding $1 million dollars or, as Plaintiffs miscalculate it, more than $3 million dollars. However, based on Plaintiffs' statement that they lost over $100,000, for which treble damages were available under PHIFA, Defendants had notice of damages of about $300,000 on the PHIFA claim. Also,

Defendants had notice of possible damages of $35,000 for breach of contract. Although Plaintiffs' assertion of damages in their Complaint for the MCPA violation was only half of what they now allege, Plaintiffs could not recover under both PHIFA and MCPA, as discussed above, so the discrepancy is of no moment.

Although liability has been established as to Counts II (PHIFA), III (MCPA), and IX (breach of contract), an allegation "relating to the amount of damages" is not deemed admitted based on a defendant's failure to deny in a required responsive pleading. Fed. R. Civ. P. 8(b)(6); *see Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."). Therefore, on default judgment, "[c]laims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed." *U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 318 (E.D.N.Y. 2007); *see Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (same). The Court only may award damages without a hearing if the record supports the damages requested. *See, e.g.*, *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment was entered against defendant because plaintiff submitted affidavits and printouts of electronic records establishing the amount of damages it sought).

As noted, Plaintiffs submitted (1) Plaintiffs' Affidavit in Support of Motion for Default of Defendant Charles Head, (2) Addendum #B to Equity Purchase Agreement, (3) HUD 1 form and (4) MDAT Property Description. Pls.'s Mot. Exs. 1, 2, 3, 5. This evidence does not show how

much equity Plaintiffs had in their property or how much money they paid to Defendant Head. Nor have Plaintiffs substantiated the claim that Defendant Head's PHIFA violations were knowing and willful. Therefore, the evidence is insufficient for me to determine the actual amount of damages or whether treble damages are appropriate. A hearing on damages will be set, at which time Plaintiffs are directed to produce evidence to substantiate each area of recoverable damages that they seek. Counsel are to schedule a telephone conference call to discuss scheduling the hearing.

III.    CONCLUSION

In sum, I recommend that the Court grant Plaintiffs' Motions for Default Judgment as to liability on Counts II, III, and IX, deny the motion as to Counts IV, V, VI, VII, and VIII, and withhold its ruling as to damages until after I have held an evidentiary hearing and prepared a second report and recommendation.

The parties have fourteen (14) days in which to file objections to this Report and Recommendation pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: October 20, 2010                                    /s/
                                                Paul W. Grimm
                                                United States Magistrate Judge

lyb